UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW SCHMIDT,

Plaintiff,

v.

Case No.: 2:25-cv-13258
Hon. Gershwin A. Drain

DEXCOM, INC.,

Defendant.
______________________________/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [ECF No. 9]**

On October 15, 2025, Plaintiff Andrew Schmidt filed the instant action against Defendant Dexcom, Inc. Plaintiff alleges that he was injured while using Defendant's "Dexcom G6 Continuous Glucose Monitoring System" and asserts various theories of liability against Defendant.

Presently before the Court is Defendant's Motion to Dismiss or, in the alternative, Motion to Compel Arbitration. Plaintiff opposes the motion. The Court concludes that a hearing will not aid in the disposition of this motion and will determine the outcome on the briefs. E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, Defendant's Motion to Dismiss [ECF No. 9] is GRANTED and this case DISMISSED for failure to demonstrate the existence of personal jurisdiction.

## I. BACKGROUND

Plaintiff Andrew Schmidt lives in Davisburg, Michigan. ECF No. 1, PageID.3. Defendant Dexcom, Inc. is a Delaware corporation with its principal place of business in California. ECF No. 9, PageID.65. Defendant produces the "Dexcom G6 Continuous Glucose Monitoring System" ("G6"), which is a "real-time continuous glucose monitoring system authorized for marketing by the FDA and indicated for the management of diabetes in persons two years and older." *Id.* at PageID.59. The G6 deploys a needle and sensor under the skin, and the needle retracts back into the applicator. *Id.* Once the sensor is under the skin, it transmits the user's glucose data to a display device, such as the Dexcom receiver or an app on the user's smartphone. *Id.* at PageID.60–61. A user can use the G6 with or without a Dexcom account, but if he chooses to create a Dexcom account, he is required to agree to the Terms of Use which include an arbitration clause. *Id.* at PageID.61; ECF No. 9-3, PageID.131, 143–44. According to Defendant, Plaintiff created a Dexcom account and accepted Defendant's Terms of Use and arbitration clause. ECF No. 9-4, PageID.173.

The G6 is considered a Class II medical device[1] under the Medical Device Amendments ("MDA") of the Food, Drug, & Cosmetic Act. *Id.* at PageID.62. The

[1] The MDA divides medical devices into three classes according to risk, with Class I posing the least risk and Class III posing the most risk. *See Higginbottom v. Dexcom, Inc.*, 744 F. Supp. 3d 1058, 1079–80 (S.D. Cal. 2024).

G6 was approved for marketing by the Food & Drug Administration ("FDA") through the FDA's De Novo review process, which is a robust review process for approving a medical device which has no predicates. *See Dickson v. Dexcom, Inc.*, No. 2:24-cv-00121, 2024 WL 3417392, at *1, *1 n.1, *5 (W.D. La. July 15, 2024).[2] To obtain De Novo approval of a medical device from the FDA, the FDA must find that general or special controls[3] would provide reasonable assurance of the device's safety and effectiveness. *See* 21 U.S.C. § 360c(a)(1)(B); 21 C.F.R. § 860.260(c). The FDA approved the G6 pursuant to its De Novo review process and established regulations governing the special controls necessary for the G6 and for future integrated continuous glucose monitoring systems. *See* 21 C.F.R. § 862.1355.

---

[2] If a medical device has predicates, it is reviewed for equivalence with those predicate devices rather than under heightened "De Novo" review. *See Dickson*, 2024 WL 3417392, at *5.

[3] General controls are universal baseline provisions that apply to all medical device classes, and include labeling, device listing, registration requirements, quality systems, good manufacturing practices, post-market surveillance, data requirements, and performance standards. *See* FDA, General Controls for Medical Devices, https://www.fda.gov/medical-devices/regulatory-controls/general-controls-medical-devices. Special controls are device-specific requirements for Class II devices where the FDA has deemed general controls alone to be insufficient to provide reasonable assurance of their safety and effectiveness, and for which there is sufficient information to establish special controls to provide such assurance. These may include additional performance standards, post-market surveillance, patient registries, special labeling requirements, premarket data requirements, and guidelines. *See* FDA, Regulatory Controls, https://www.fda.gov/medical-devices/overview-device-regulation/regulatory-controls#special; *see also Higginbottom*, 744 F. Supp. at 1079–80.

Plaintiff alleges that on December 1, 2022, he was attempting to put the G6 needle into his arm when the needle detached from the system into his arm. ECF No. 1, PageID.3. Plaintiff underwent surgery in an attempt to remove the needle, which left permanent scarring and disfigurement. *Id.* Plaintiff alleges that a second needle was also lost in his arm at some later time. *Id.*[4]

Plaintiff filed the instant action against Defendant on October 15, 2025. *See* ECF No. 1. Plaintiff brings claims for negligence, strict liability, failure to warn, negligent design, negligent manufacturing, breach of implied warranty, breach of express warranty, and breach of the Michigan Consumer Protection Act. *See* ECF No. 1.

In lieu of an answer, Defendant filed a Motion to Dismiss or, in the alternative, to Compel Arbitration. *See* ECF No. 9. First, Defendant argues that Plaintiff has failed to establish personal jurisdiction. Defendant notes that the Court has no general personal jurisdiction because, being a Delaware corporation with its principal place of business in California, Defendant is not "at home" in Michigan. *Id.* at PageID.65. Defendant further asserts that Plaintiff has alleged no facts to

[4] Although not relevant to the disposition of this motion, Defendant states that the G6 is only approved for an adult user to wear on the abdomen and is not approved for wear on the arm. *See* ECF No. 9-2, PageID.89 (FDA's Decision Summary regarding the G6). In other words, Defendant claims that Plaintiff was misusing the G6 when he was injured. *See* ECF No. 9, PageID.60. Plaintiff stated in his reply that Dexcom's website suggests the arm is a proper location to use the G6. ECF No. 10, PageID.359.

establish specific personal jurisdiction, *i.e.*, that Defendant purposefully availed itself of conducting business within Michigan. *Id.* at PageID.66. In the alternative, Defendant argues that the Court should compel arbitration because Plaintiff is subject to the arbitration clause contained in Defendant's Terms of Use, which he necessarily accepted when he registered a Dexcom account. *Id.* at PageID.68. Finally, Defendant argues that Plaintiff has failed to state a claim because his claims are expressly or impliedly preempted by the MDA and because his claims are insufficient or otherwise conclusory. *Id.* at PageID.71–81.

In response, Plaintiff alleges that Defendant is subject to general personal jurisdiction in Michigan because he marketed, sold, and procured for use the G6 in Michigan. ECF No. 10, PageID.361. Plaintiff also alleges that Defendant is subject to specific personal jurisdiction in Michigan for the same reason. *Id.* at PageID.364. Next, Plaintiff alleges that Defendant proffered no evidence of Plaintiff's agreement to arbitrate except for "self-serving affidavits." *Id.* at PageID.364–65. Finally, Plaintiff alleges that the complaint "contains sufficient factual information [to] state a claim [for] relief that is plausible on [its] face." *Id.* at PageID.368.

The Court resolves the motion on the personal jurisdiction argument, although it briefly addresses the other arguments as well.

## II. LEGAL STANDARD

A party may file a pre-answer motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). *See* Fed. R. Civ. P. 12(b)(2). Motions to dismiss under Rule 12(b)(2) "involve[] burden shifting[.]" *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 660 (6th Cir. 2023). First, a plaintiff must make a prima facie case for personal jurisdiction, which may be done through the complaint and supplementary affidavits. *Id.*; *Ross v. Robinson, Hoover & Fudge, PLLC*, 173 F.4th 745, 751–52 (6th Cir. 2026).[5] To determine that a plaintiff has established a prima facie showing of personal jurisdiction, the court must find that the plaintiff "has set forth specific facts that support a finding of jurisdiction" which are stated with "reasonable particularity." *Palnik v. Westlake Ent., Inc.*, 344 F. App'x 249, 251 (6th Cir. 2009); *see also Malone v. Windsor Casino Ltd.*, 14 F. App'x 634, 636 (6th Cir. 2001) ("It is axiomatic that the basis for 'hailing' a foreign defendant into court must be clearly articulated when establishing personal jurisdiction. '[A plaintiff] must allege in his pleading the facts essential to show jurisdiction.'").

[5] If a court permits limited discovery or an evidentiary hearing on the issue of personal jurisdiction under Rule 12(b)(2), the plaintiff's burden of proof is to demonstrate the existence of personal jurisdiction by a preponderance of the evidence. *Malone*, 965 F.3d at 505. However, where—as here—the court decides to rule on the Rule 12(b)(2) motion on the written submissions alone, the plaintiff's initial burden is simply to make a prima facie showing. *Id.*

If the plaintiff makes a prima facie showing of personal jurisdiction, the burden shifts to the defendant, who must support the motion to dismiss with evidence. *Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 437 (6th Cir. 2022). Then, the burden shifts back to the plaintiff, "who may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.* at 437–38 (quotation marks omitted).

## III. DISCUSSION

### A. Personal Jurisdiction

"As with every case, [a court] must begin with any jurisdictional issues." *Peters Broad. Eng'g, Inc.*, 40 F.4th at 438. Under the Due Process Clause, "[f]ederal courts are both empowered and constrained by personal jurisdiction, which establishes 'the types of litigants the federal courts may bind with their judgments, whether they be plaintiffs or defendants.'" *Id.* (quoting *Canaday v. Anthem Cos., Inc.*, 9 F.4th 392, 395 (6th Cir. 2021)). The extent of a court's authority "depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)).

Thus, "[p]ersonal jurisdiction falls into two categories: general and specific." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 501 (6th Cir. 2020). "General jurisdiction exists when the defendant's affiliations with the forum state are so continuous and systematic as to render the defendant essentially at home there." *Id.* (quotation marks omitted). "Absent exceptional circumstances, a foreign corporation is at home only in the states in which it is incorporated and where it maintains its principal place of business." *Willis v. RhinoAg, Inc.*, No. 1:19-cv-01276-STA-jay, 2020 WL 2529842, at *4 (W.D. Tenn. May 18, 2020) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)) (quotation marks omitted). If a defendant is subject to a court's general jurisdiction, "any and all claims" may be brought against the defendant in that forum, including those that do not relate to the forum state or to the defendant's activity there. *Ford Motor Co.*, 592 U.S. at 358.

"Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy[.]" *Malone*, 965 F.3d at 502 (quotation marks omitted). For a court to have specific jurisdiction over a defendant, the defendant must have purposefully availed itself of the "privilege of conducting activities within the forum State." *Ford Motor Co.*, 592 U.S. at 359. "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Id.* Additionally, the plaintiff's claims must arise out of or relate to the defendant's contacts with the forum. *Id.* In other words, "the acts of the defendant or

consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002) (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

Here, Plaintiff has failed to make a prima facie showing of general or specific personal jurisdiction. The allegations in Plaintiff's complaint clearly do not support general personal jurisdiction. Defendant "is not incorporated in [Michigan] and does not maintain its principal place of business there." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 414 (2017). Nor has Plaintiff alleged any exceptional circumstances that would make Defendant "at home" in Michigan. *See id.* ("Nor is BNSF so heavily engaged in activity in Montana 'as to render [it] essentially at home' in [this] State." (quoting *Daimler AG*, 571 U.S. at 127)). Plaintiff's complaint is devoid of any facts establishing the scope of Defendant's presence in Michigan.

In Plaintiff's response, Plaintiff alleges that Defendant's business in Michigan is "continuous and systematic" because it marketed and sold the G6 in Michigan, and therefore Defendant is subject to general personal jurisdiction here. ECF No. 10, PageID.361. Setting aside the fact that none of this information is contained in Plaintiff's complaint, the Supreme Court has resoundingly rejected the notion that simply doing business in a State, even if it is continuous and systematic, subjects a

corporation to general personal jurisdiction in that forum. *See Daimler AG*, 571 U.S. at 137 ("Plaintiffs would have us… approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.'… That formulation, we hold, is unacceptably grasping."). Rather, the corporation's activities must be so pervasive that they render it "essentially at home" in the State. *Id.* Plaintiff has not explained how Defendant's activities could possibly clear this high bar. Again, Plaintiff made no allegations about Defendant's contacts with Michigan.

Furthermore, Plaintiff's allegations do not establish specific personal jurisdiction because they "do not even begin to make out a prima facie showing that [Defendant] purposefully availed [itself] of the privilege of acting in Michigan or that [P]laintiff's causes of action arise from [Defendant's] activities in Michigan." *Myles v. Trendset, Inc.*, No. 07-CV-15390, 2008 WL 11355524, at *3 (E.D. Mich. Mar. 3, 2008). Plaintiff's complaint repeatedly refers to Defendant putting the G6 in the "stream of commerce," but alleges nothing else. *See, e.g.*, ECF No. 1, PageID.3. As a matter of law, however, putting an item into the general stream of commerce is not enough to establish specific personal jurisdiction. *Parker v. Winwood*, 938 F.3d 833, 840 (6th Cir. 2019) ("[F]or a defendant to purposefully avail himself of the privilege of acting within a forum state, he must do more than merely place a product into the stream of commerce."). Moreover, Plaintiff's complaint contains no facts to

establish that any of his injuries occurred in Michigan or are related to Defendant's contacts in Michigan. The only allegation linking anything in this case to Michigan is that Plaintiff currently resides in Davisburg. However, Plaintiff has failed to allege that his injuries relate at all to Defendant's contacts, whatever they may be, with Michigan.

In Plaintiff's response, Plaintiff claims that specific personal jurisdiction exists because Defendant marketed, sold, and procured for use the G6 in Michigan. ECF No. 10, PageID.364. This information is not contained in Plaintiff's complaint. When considering whether a plaintiff has established a prima facie case of personal jurisdiction, the Court looks to the pleadings and any affidavits in support, not to the briefing. *See Ross*, 173 F.4th at 751–52 (stating that the plaintiff can make a prima facie showing through the complaint alone as well as supplementary affidavits); *Neogen Corp.*, 282 F.3d at 893 (noting that when making a determination about prima facie personal jurisdiction, the court looks at "the facts… [that] have been taken from [the] complaint."). Moreover, "it is well-established that a pleading may not be amended in a response brief." *Randolph v. Congress Collection LLC*, No. 20-12146, 2021 WL 364256, at *1 (E.D. Mich. Feb. 3, 2021) (quoting *Jocham v. Tuscola Co.*, 239 F. Supp. 2d 714, 732 (E.D. Mich. 2003)). "Inexplicably, [Plaintiff's] counsel did not seek to amend his pleadings" in response to Defendant's

motion, nor did he file affidavits in support of personal jurisdiction. *Ross v. PennyMac Loan Servs., LLC*, 761 F. App'x 491, 494 (6th Cir. 2019).

Ultimately, "[t]o be entitled to proceed with his suit, [Plaintiff] must have alleged specific facts that establish with reasonable particularity" that his claims arose out of or were related to Defendant's contacts in Michigan. *Palnik*, 344 F. App'x at 251. It is not error for a court to dismiss an action "based upon [a] plaintiff's failure to allege a valid basis for personal jurisdiction[.]" *Malone*, 14 F. App'x at 636. Plaintiff did not allege facts to establish personal jurisdiction with reasonable particularity, and it is within the prerogative of this Court to dismiss the action for that failure.[6]

**B. Amendment of Complaint**

For completeness, the Court considers whether Plaintiff should be permitted to amend his complaint. Courts have the discretion to choose to "treat new allegations in a response brief"—such as Plaintiff's allegations regarding Defendant's marketing and sales in Michigan—"as an implicit motion for leave to amend the complaint," thereby fixing any pleading deficiencies. *Randolph*, 2021

[6] When analyzing whether specific personal jurisdiction exists, courts also must ask whether such jurisdiction exists under the State's long-arm statute. However, "if jurisdiction is not proper under the Due Process Clause it is unnecessary to analyze jurisdiction under the state long-arm statute[.]" *Conn v. Zakharov*, 667 F.3d 705, 711–12 (6th Cir. 2012). Given that the Court analyzed personal jurisdiction under the Due Process Clause and found it lacking, the Court need not engage in an analysis of Michigan's long-arm statute.

WL 364256, at *1 (citing *JAT, Inc. v. Nat'l City Bank of Midwest*, 460 F. Supp. 2d 812, 818 (E.D. Mich. 2006)). Under Federal Rule of Civil Procedure 15(a), leave to amend a complaint should be "freely given when justice so requires." *See* Fed. R. Civ. P. 15(a).

The Court concludes that under the circumstances here, justice would not be served by granting leave to amend, so the Court declines to give Plaintiff an opportunity to do so. The Court bases this conclusion on the fact that Plaintiff failed to meaningfully contest any of Defendant's other arguments in support of arbitration or dismissing the case. Even if personal jurisdiction were proper, the Court would have compelled arbitration or dismissed the case anyway.

First, Defendant argued that if the Court found personal jurisdiction to be proper, the Court should stay the case and compel mandatory arbitration. ECF No. 9, PageID.67. Defendant noted that Plaintiff agreed to the Terms of Use when he created a Dexcom account, which contained an arbitration agreement. *Id.* at PageID.68–69. Next, Defendant argued that the arbitration agreement covered the instant dispute because it provides that disputes regarding any aspect of the relationship between Plaintiff and Defendant, including torts, are to be resolved through arbitration. *Id.* at PageID.69–70.[7]

[7] Under the Federal Arbitration Act, an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. A district court is required to compel

In response, Plaintiff did not argue that the instant dispute would not be covered by the arbitration clause or that there is any other reason, as a matter of law, that arbitration cannot or should not be compelled. Nor did Plaintiff attach any evidence to contradict Defendant's position. Rather, Plaintiff argued that Defendant failed to attach evidence that Plaintiff agreed to the Terms of Use. But Plaintiff's argument is plainly untrue. Defendant attached the affidavits of Shaw Strothers, the Senior Manager of User Experience Design at Dexcom, ECF No. 9-3, PageID.129, and Sean Kellogg, Privacy Legal Counsel at Dexcom. ECF No. 9-4, PageID.172. The affidavit of Mr. Strothers demonstrates that any person who signs up for a Dexcom account is required to agree to the Terms of Use—and thus, the arbitration agreement—by clicking a checkbox indicating his agreement to those terms. ECF No. 9-3, PageID.136. The affidavit of Mr. Kellogg demonstrates that Plaintiff created his account on June 1, 2022, which included accepting the Terms of Use containing the arbitration clause at issue. ECF No. 9-4, PageID.173.[8]

---

arbitration if "a valid agreement to arbitrate exists between the parties and… the specific dispute falls within the substantive scope of the agreement." *Andrews v. TD Ameritrade, Inc.*, 596 F. App'x 366, 371 (6th Cir. 2014). "Any doubts regarding arbitrability should be resolved in favor of arbitration." *Id.*

[8] Plaintiff argues that Defendant did not provide evidence that the Terms of Use it attached to its motion—which are dated February 25, 2021—were the ones that Plaintiff agreed to. ECF No. 10, PageID.364. Not true. Defendant provided evidence that Plaintiff agreed to the Terms of Use on June 1, 2022, and that the February 25, 2021 version of the Terms of Use were in effect until January 26, 2023. ECF No. 9-3, PageID.144; ECF No. 9-4, PageID.173. Thus, Defendant provided evidence that the February 25, 2021 Terms of Use are the ones that Plaintiff agreed to.

Plaintiff suggests that these affidavits are "self-serving," but regardless of whether that is true, they are valid and admissible because the affiants are competent, they set forth facts that would be admissible in evidence, and their declarations are based on their own personal knowledge. *See Boykin v. Family Dollar Stores of Mich.*, 3 F.4th 832, 841 (6th Cir. 2021) ("Family Dollar calls Boykin's flat denial of accepting the arbitration contract 'self-serving.' Why does that matter?... [P]arties should avoid this 'self-serving' label because it does nothing to undermine the other side's evidence[.]"); *see also Am. Speedy Printing Ctrs., Inc. v. AM Marketing, Inc.*, 69 F. App'x 692, 696 (6th Cir. 2003). Plaintiff also argues that there is no evidence of his signature. But under Michigan law, a signature is not required to create a valid contract. All that is needed is some unequivocal act sufficient to demonstrate acceptance. *Cofer v. Fin. Educ. Servs., Inc.*, 722 F. Supp. 3d 774, 782 (E.D. Mich. 2024) (citing *Kloian v. Domino's Pizza, L.L.C.*, 273 Mich. App. 449, 453–54, 733 N.W.2d 766 (2006)). Clicking a box that unequivocally indicates agreement—as Plaintiff did here—is sufficient. *See id*. at 783.[9] Thus, the Court would compel arbitration in this case even if personal jurisdiction were satisfied.

[9] Defendant notes that the Terms of Use contain a choice of law provision designating California law as the governing law. ECF No. 9, PageID.46 n.1. Defendant did not raise the choice-of-law issue in its motion but preserved it to be raised at a later time if the Court permitted the case to proceed. *Id.* Under California law, clicking a box to indicate agreement is also permissible to create a binding and enforceable contract. *See, e.g.*, *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 935–36 (2022).

Moreover, even if personal jurisdiction were satisfied *and* the Court declined to compel arbitration, the case would have to be dismissed for failure to state a claim. Defendant meticulously explained that under the MDA, certain state-law tort claims are expressly preempted, and argued that all of Plaintiff's claims are expressly preempted here. ECF No. 9, PageID.72–77.[10] Defendant also claimed that Plaintiff's claims are impliedly preempted under conflict preemption, and that Plaintiff failed to adequately plead facts to support his causes of action. *Id.* at PageID.77–82.

To say that Plaintiff's response to these arguments is deficient is an understatement. Plaintiff spends 3 whole pages on a block quote that merely recites the governing standards for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF No. 10, PageID.365–67. Then, without any analysis, he concludes that his complaint "contains sufficient factual information [to] state a claim [for] relief that is plausible on [its] face." *Id.* at PageID.368. That is all. Plaintiff does not engage with Defendant's arguments about the specific standards governing each of his causes of action or the deficiencies Defendant identified for each cause of action. "It is not sufficient for a party to mention a possible argument

[10] Under the MDA, a state cannot establish or continue in effect any requirement for a medical device that is different from, or in addition to, any requirement applicable to the device under the MDA, and which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device. *See* 21 U.S.C. § 360k(a). This preemption provision may encompass state common law claims, like torts. *See Riegel v. Medtronic, Inc.*, 552 U.S. 312, 323–24 (2008).

in the most skeletal way, leaving the court to… put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

Nor does Plaintiff meaningfully contest that his claims are preempted. He merely states that detailed factual allegations are not required to survive a motion to dismiss. ECF No. 10, PageID.368. Aside from this bare conclusory statement, Plaintiff has offered no law or authority to contradict Defendant's purely legal argument that Plaintiff's claims cannot survive because they are preempted. "[F]ailure to respond to an argument made in support of a Rule 12(b)(6) motion to dismiss a claim results in a forfeiture of the claim." *Homrich v. City of Wyoming*, 800 F. Supp. 3d 801, 823–24 (W.D. Mich. 2025) (quoting *Ellison v. Knox Cnty.*, 157 F. Supp. 3d 718, 724–25 (E.D. Tenn. 2016)).

Thus, the Court will not allow Plaintiff a chance to amend his complaint to fix the deficiencies pertaining to personal jurisdiction due to his failures to meaningfully contest the other bases for relief that Defendant identified.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss or Compel Arbitration [ECF No. 9] is **GRANTED**. The case is hereby **DISMISSED WITHOUT PREJUDICE**.[11]

[11] "[D]ismissals for lack of personal jurisdiction should be made 'without prejudice.'" *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing Fed. R. Civ. P. 41(b)).

**IT IS SO ORDERED.**

Dated: August 4, 2026

/s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge